JOHN CHARLES ANDERSON, Appellant, v. KATE ANDERSON et al., Respondents.

Where in a General Term order, dissolving a temporary injunction, it is stated that it is made on the ground that the action cannot be maintained, a question of law is raised which is reviewable here.

A devisee of the legal estate, in possession of the property devised, cannot maintain an action to establish the will against the heirs-at-law.

The courts of equity in this state have no inherent jurisdiction to entertain such an action, and it is not given by the provisions of the Code of Civil Procedure (§§ 1866, 1867), authorizing the determination "in an action brought for that purpose" of the question as to "the validity, construction or effect under the laws of this state of a testamentary disposition of real property." These provisions refer, not to the validity of the will making the disposition, but simply to the validity of the disposition so made.

The act of 1879 (Chap. 316, Laws of 1879) was repealed by implication by said provisions of the Code (§§ 1866, 1867); these were intended to furish the only statutory rule governing the general subject-matter treated of in them.

It seems the policy of this state is to commit to the courts of probate the decision of questions arising upon the due execution of an alleged will, and it is only in special and exceptional cases that a court of equity will interfere Van Alst v. Hunter (5 Johns. Ch. 148); Clarke v. Sawyer (2 N. Y. 498); S. C., 2 Barb. Ch. 411); Brady v. McCosker (1 N. Y. 214); Bailey v. Briggs (56 id. 407); Pryer v. Howe (40 Hun, 383); Drake v. Drake (41 id. 366); Adams v. Becker (47 id. 65) distinguished.

(Argued December 11, 1888; decided January 15, 1889.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made May 18, 1888, which reversed an order of Special Term granting a preliminary injunction. The order of reversal stated that it was granted "for the reason that the action is not maintainable."

This action was brought by plaintiff as devisee under the will of John Anderson, of all of the real estate of which he died seized, against the heirs-at-law of the testator.

The nature of the action and of the injunction are stated in the opinion.

*Calvin Frost* for appellant. The order of the General Term having reversed that of the Special Term, upon the ground

that "the action is not maintainable," an appeal lies to this court, and no other question is involved. (*Tolman* v. *S. B. & N. Y. R. R. Co.*, 92 N. Y. 353 ; *Allen* v. *Mayor, etc.*, 73 id. 1.) An action by a devisee under a will, to establish it as a will of real estate, against the heirs-at-law in a court of equity, is clearly maintainable, independently of any statute ; it comes within a well defined head of equity jurisdiction. (2 Story's Eq. § 1447 ; *Boyce* v. *Rossborough*, 1 Kay, 71 ; *Colclough* v. *Boyce*, 6 H. L. Cas. 1 ; *Van Alst* v. *Hunter*, 5 Johns. Ch. 148 ; *Clark* v. *Sawyer*, 2 Barb. Ch. 411 ; *Brady* v. *McCosker*, 1 Comst. 214 ; *Baily* v. *Briggs*, 56 N. Y. 415.) A change in the practice of a court of equity "is not to be inferred, and can only be sanctioned by clear and explicit provisions for that purpose." (*Learned* v. *Tillotson*, 97 N. Y. 1, 7.) The plaintiff can maintain this action under the provisions of chapter 316, Laws of 1879. (*Horton* v. *Cantwell*, 108 N. Y. 255 ; *Smith* v. *People*, 47 id. 330 ; Sedg. on Constr. of Stat. and Const. Law [2d ed.] 106 ; *In re Cursor*, 89 N. Y. 403 ; *Mark* v. *State*, 97 id. 578 ; *Daviess* v. *Fairbairn*, 3 How. [U. S.] 646 ; *Monegan* v. *People*, 55 N. Y. 617 ; *Wood* v. *U. S.*, 16 Peters, 362 ; *Wenzler* v. *People*, 58 N. Y. 520 ; *People* v. *Goodwin*, 50 Barb. 569 ; *People* v. *Carr*, 100 N. Y. 239, 242 ; *Maillard* v. *Lawrence*, 16 How. [U. S.] 251 ; 89 N. Y. 403.) Assuming that the act of 1879 shall be held to have been wholly repealed by section 1866 of the Code, this action is equally maintainable. (*Noyes* v. *Children's Aid Society*, 70 N. Y. 481, 483 ; *State* v. *Eureka C. M. Co.*, 8 Nev. 15 ; 81 Penn. St. 27 ; *Pryer* v. *Howe*, 40 Hun, 383 ; *Drake* v. *Drake*, 41 id. 366 ; *Hovey* v. *Purdy*, 10 N. Y. S. R. 40; *Chipman* v. *Montgomery*, 63 N. Y. 221 ; 89 id. 161.)

*Edward C. James* for respondent. This action is not maintainable. (*Rogers* v. *Rogers*, 3 Wend. 515 ; *Colton* v. *Ross*, 2 Paige, 396 ; *Bowers* v. *Smith*, 10 id. 193, 200 ; *Marvin* v. *Marvin*, 11 Abb. [N. S.] 102, 105 ; *Bowen* v. *Idley*, 6 Paige, 46 ; *Russell* v. *Hartt*, 87 N. Y. 19, 24 ; *Isham* v.

*Gibbons,* 1 Bradf. 69, 76; *Chipman* v. *Montgomery,* 63 N. Y. 221, 230; *Monarque* v. *Monarque,* 80 id. 320, 325, 326; *Weed* v. *Weed,* 94 id. 243, 246, 247.) Chapter 316, Laws of 1879 is repealed by sections 1866, 1867 of the Code of Civil Procedure. (*Horton* v. *Cantwell,* 108 N. Y. 255.) Section 1866 of the Code restores section 1 of chapter 238, Laws of 1853, and it contains nothing that alters the rule of construction, settled under that act, that equity could not take jurisdiction where only legal rights were involved. (*Horton* v. *Cantwell,* 108 N. Y. 255; *Chipman* v. *Montgomery,* 63 id. 221–230; *Weed* v. *Weed,* 94 id. 243, 246, 247; *Hovey* v. *Purdy,* 10 N. Y. S. R. 40.)

PECKHAM, J. This action is brought to establish by a judgment of the Supreme Court the will of the late John Anderson. The case comes here on an appeal from an order of the General Term reversing an order of the Special Term granting an injunction restraining defendants from the prosecution of any action based upon the invalidity of the alleged will. Ordinarily no appeal lies to this court from an order dissolving an injunction, but the General Term has incorporated in its order a statement that the order of the Special Term granting the injunction is reversed on the ground that the action cannot be maintained, and hence a question of law is raised which is reviewable here. (*Allen* v. *Meyer,* 73 N. Y. 1; *Talman* v. *Syracuse, etc., R. R. Co.,* 92 N. Y. 353.)

The will which is here sought to be established devises the absolute title in fee-simple to the larger part of the estate of the testator to the plaintiff, and he or his vendees are in possession; and the question to be decided is whether a devisee of the legal estate, being in possession of the property devised can maintain an action to establish the will against the heir-at-law.

It is claimed that such an action could be maintained in England, and that the Court of Chancery in this state could have taken cognizance thereof; and that such jurisdiction was transferred to the Supreme Court under the present Constitu-

tion as an inherent, equitable jurisdiction of that court. It is also claimed that it exists by virtue of chapter 316 of the Laws of 1879, or if that has been repealed, that it still exists by virtue of sections 1866 and 1867 of the Code of Civil Procedure.

We think that the jurisdiction claimed does not exist in this state.

The question has been decided in England in a manner favorable to the views of the learned counsel for the plaintiff. It was so decided in the case of *Boyse* v. *Rossborough* (1 Kays Ch. 71; *S. C.*, on appeal in chancery, 3 De Gex, M. & G. 817; and in the House of Lords, 6 H. L. 1, in 1857). The affirmance in the House of Lords was upon the admission of the counsel that such an action would lie. By the several opinions of the learned judges it appears that they were unable to determine the origin of the jurisdiction with any certainty, but the claim that it was to be limited to cases in which trusts were created by the will was not thought by them to be satisfactory. They said there was no special equity against the heir which arose by reason of the existence of the trusts, because the only question in which he was interested was the question of will or no will, which existed just the same whether trusts were or were not created by the instrument. It is true that the question in which the heir is interested is whether there is or is not a will, and still the jurisdiction of chancery to establish the will might depend upon its general jurisdiction over trusts and that jurisdiction might depend upon the question whether there was a valid will or not, and thus by reason of its jurisdiction over trusts it could exercise the incidental jurisdiction of establishing the instrument in which they were created, as properly executed by a competent testator.

However that may be, the case cited does decide that such an action could be maintained in England. In a note to the report of the case in 3 De Gex, Macnaghten & Gordon, 817, it is stated that, by reason of the passage of the act of 20 and 21 Victoria (Chap. 27, § 12), providing for the probate of a will of

real estate in a court of probate, the practice of establish-
ing it in chancery is of comparatively rare occurrence.
The English rule is stated in Pomeroy's work on Equity
Jurisprudence (3 Pom. Eq. Juris. § 1158); and in a note it is
said that the sole ground of the jurisdiction was a condition
in England which does not exist in a single American state,
and no longer exists in England, because of the passage of
the act of 20 and 21 Victoria (*supra*), establishing courts of
probate for wills of real estate. In this country jurisdiction
is granted to courts of probate to pass upon the question of
the due execution of wills of both real and personal property;
and unless special and exceptional cases are shown to exist for
the interposition of a court of equity, bills for the mere pur-
pose of establishing a will in equity in the case of a devisee
of a legal estate, who is in possession under the will, ought
not to be maintained.

Story, in his work on Equity Jurisprudence (2 Story's Eq.
Jur. § 1447), gives the English rule on the subject, but
cites no American case to sustain it. Actions have been per-
mitted both in England and in this state to be brought in
equity by an heir-at-law against a devisee, where the heir
sought to set aside the will, and where there was an out-
standing term granted by the testator in his lifetime, by
reason of the existence of which an action of ejectment could
not be maintained by the heir. In such cases the heir has
been permitted to come into a court of equity and ask for an
injunction against the devisee, enjoining him from setting up,
in an action of ejectment to be brought by the heir against
him, the existence of the outstanding term as a defense to the
action; and in such cases it has been held that the court was
not bound to proceed only to the extent of granting the
injunction, but that it might also grant an issue to be tried
at law as to the validity of the will, or it might simply grant
the injunction and leave the heir-at-law to his action of eject-
ment. This doctrine is very fully stated in the English case
above cited of *Boyse* v. *Roseborough*, in the report in Kay.
It is also thus decided in the case of *Brady* v. *McCosker*

(1 N. Y. 214). I have been unable to find any reported case in this state holding that the Supreme Court has any such inherent jurisdiction as is claimed by the learned counsel for the plaintiff.

The case of *Van Alst* v. *Hunter* (5 Johns. Ch. 148), was the case of an action by the heirs-at-law against the defendants, as devisees, to set aside the will as made by an incompetent testator. The defendants had taken possession of the real estate under the will. Why an action of ejectment was not brought by the heirs-at-law is not stated in the case. Nor was the question of jurisdiction once raised, or the subject adverted to in any manner whatever. The chancellor had granted a feigned issue upon the question of competency of the testator, which had been once tried at law, and the verdict was in favor of the will, and the judge trying the case certified his satisfaction therewith. Counsel for the heirs-at-law moved for a new trial, as matter of course, and contended that in such a case, where the result of the verdict was to disinherit the heir, that a new trial by the English rule was invariably granted. The only question decided by the chancellor was that there was no such inexorable rule for the granting of a new trial as matter of right; that it remained discretionary with the chancellor, and in that particular case he exercised it by refusing to grant a new trial. *Clarke* v. *Sawyer* (2 N. Y. 148), was a suit by the heirs-at-law to annul a will on the ground of imbecility and undue influence. The assistant vice-chancellor held the will to be good. The chancellor reversed that decision and such reversal was affirmed in this court. The question of jurisdiction was raised for the first time in this court, and it was held to be raised too late; the court adding that it would not entertain jurisdiction to set aside a will of real estate on the ground of the testator's incompetency where there was a perfect remedy at law, and where the objection was taken in due season. The report of the same case in 2 Barbour's Chancery, 411, shows that the only question raised or considered in that court by the chancellor was whether the decedent was of sound and disposing mind at the time of the execution of the will.

*In Brady* v. *McCosker* (*supra*), the plaintiff claimed as heir-at-law and in hostility to the will, and was out of possession, and charged that the will was procured by fraud. An obstacle existed to the maintenance of ejectment by the plaintiff, being an outstanding term in trust, and part of the estate being subject to an unexpired lease under which the lessee or his assignee was in possession. This outstanding legal term was held an impediment to the proper maintenance of the action at law, on the part of the heir, in the nature of ejectment, and, consesequently, equity had jurisdiction.

In *Bailey* v. *Briggs* (56 N. Y. 407) the question was not decided and was not before the court.

These are all the cases cited by counsel upon the question as to the inherent jurisdiction of a court of equity in this state over the subject-matter of an action like this. We do not see that they support the contention that such a jurisdiction exists. On the contrary, the jurisdiction of courts of equity in considering doubtful or disputed clauses in a will has been held with entire uniformity by the courts of this state to result from its jurisdiction over trusts, and that exists only when the court is moved on behalf of an executor, trustee or *cestui que trust* and to enforce a correct administration of the power conferred by the will. We think that the jurisdiction in cases where the question arises as to the competency of the testator to make a will is certainly not broader than in cases arising upon the construction of doubtful or disputed clauses in a will; and unless such trusts exist in the instrument propounded as a will the Supreme Court has no power to establish the will (except in cases expressly provided by statute) where the devisee is in possession and the heir brings no action. We do not say that it would exist even then; that question is not here. We say that it does not exist as part of the inherent jurisdiction of a court of equity in this state.

But it is claimed that if there be no inherent jurisdiction, yet the act, chapter 316 of the Laws of 1879, confers it. In *Horton* v. *Cantwell* (108 N. Y. 255), it was held that the act of 1879 was repealed by implication by the Code of Civil

Procedure, sections 1866 and 1867. The learned counsel for the plaintiff, however, claims it was not necessary to the decision of the case mentioned, to hold that .the act of 1879 was repealed, and that we are at liberty to re-examine the question. In the case cited, the plaintiff claimed to maintain the action by virtue of that act, and as she was an heir-at-law, and the terms of the act provided that such an action might be brought by an heir-at-law, it was thought necessary to determine the question whether that act had been repealed or not. It was determined that it had been. A re-examination of the question convinces us that the decision was correct. It is true that the act of 1879 is not repealed in terms. The sections of the Code of Civil Procedure (§§ 1866 and 1867), we think, furnish the whole statutory law upon the subject of which they treat. The legislature was dealing, in those sections, directly with the subject of the prior acts of 1853 and 1879, and we think it was plainly intended to furnish the only statutory rule governing the general subject-matter treated of in them. Whether a subsequent statute repeals a prior one, in the absence of express words, depends upon the intention of the legislature. We cannot believe that when stating the cases, in section 1866 of the Code, in which an action of the nature therein mentioned might be brought, it was intended by the legislature to repeal only such portions of prior acts as were minutely and directly covered by the provisions of that section, while leaving a portion of such prior acts in force which were yet intimately related to and connected with the general subject-matter treated of by that section of the Code. The effect would be to leave a portion of a sentence of the old act in force, while the remainder of the sentence and a portion of a balance of the section would be repealed. Confusion and uncertainty would be the result where a plain, unambiguous and direct provision was the end aimed at. No such intention ought to be imputed to the legislature, and no such result should be permitted if it be possible within the rules of law to prevent it.

We think the case comes within the principle of *Heckmann*

v. *Pinkney* (81 N. Y. 211) and *People* v. *Jaehne* (103 N. Y. 182, 194). It appears to us that the failure to repeal the act of 1879, in terms, was a pure inadvertence on the part of the legislature. It follows that the plaintiff can receive no benefit from the act of 1879. The last question arising is whether the action can be maintained under section 1866 of the Code of Civil Procedure. The material part of the section is as follows : " The validity, construction or effect, under the laws of the state, of a testamentary disposition of real property situated within the state, or of an interest in such property, which would descend to the heir of an intestate, may be determined, in an action brought for that purpose, in like manner as the validity of a deed purporting to convey land may be determined. The judgment in such an action may perpetually enjoin any party from setting up or from impeaching the devise or otherwise making any claim in contravention to the determination of the court as justice may require." What is meant by the expression " validity, construction or effect of a testamentary disposition of real property," etc. ? Does it refer to the validity of the instrument itself making the disposition, or only to the validity, etc., of the disposition which the instrument makes ? The language certainly is not apt to express the idea of an inquiry into the validity of the instrument itself as to whether it was duly executed by a competent testator or not. It would seem rather to assume the valid execution of the paper and to permit an inquiry in regard to the validity, construction or effect of a disposition of real property which the instrument thus executed makes. Some force is given to this construction of the language by the provision in the section that the judgment in such an action may properly enjoin a party from setting up or impeaching, not the instrument itself, but the devise which is contained in it. This language would seem to provide for the case of a devise contained in an instrument where due and proper execution is assumed, but which devise was to be adjudged good or bad as it should be determined that it was in accord with or against the law upon the subject of such devise.

We think that the language of the section in question does not include the right to bring an action in equity for the purpose of determining the validity of the will itself, as to whether it was executed by a competent testator without restraint, etc., and with proper formalities.

To hold otherwise would be to draw into the Supreme Court a vast amount of litigation in regard to the proof of the due execution of wills concerning real estate which is now exercised in a very satisfactory manner by Surrogates' Courts.

By statute the probate of a will by a surrogate is conclusive as to personal, and *prima facie* evidence as to the due execution of the will in relation to real estate. Having obtained the probate of a will of real estate before the surrogate the devisee stands with the great advantage of a judicial decision in his favor, and with the burden resting upon those who contest it to show the invalidity of the instrument. The general policy of this state is and has been to commit to the courts of probate the decision of questions arising upon the due execution of an alleged will; and no well-grounded complaint exists, as we believe, in regard to the manner in which that jurisdiction has been exercised. As was said by the lord chancellor in *Boyse* v. *Rossborough* (*supra*): "An heir-at-law may choose his own time for asserting his title, *prima facie*, and the *onus* rests upon him who contends that he has a right to say to the heir that he must assert his title now or never assert it to show under what right and for what reason such assertion is made." We think none can be given in cases where, by the law of the state, a tribunal is furnished for the proof of wills in the first instance and where all issues of the nature set up in this case may be determined.

Added force is given to our construction of the above section by a reference to other sections in the same article in which this section occurs. Section 1861 provides for an action to procure a judgment establishing a will, and says that it may be maintained by any person interested in the establishment thereof in either of the cases named in the section, which does

not include a case like the one at bar. Subsequent sections
(2611 *et seq.*) when providing for the proceedings upon the
probate or for the proofs necessary to be made thereon, speak
of the instrument as a will and not as a testamentary disposi-
tion. This language would seem to show that when the
inquiry is to extend to the question of the proper execution of
the instrument by a competent testator, etc., the Code describes
the instrument as a will, but when the validity, etc., of the
devise, separated from the validity of the instrument which
creates it, is alone to be inquired into, the " testamentary dis-
position of real property " is the expression used.

Three cases have been cited in the Supreme Court as author-
ities for holding that an action like this may be maintained
under the section of the Code in question. They are *Pryer*
v. *Howe* (40 Hun, 383); *Drake* v. *Drake* (41 id. 366), and
*Adams* v. *Becker* (47 id. 65).

The first of these cases was decided under the acts of 1853
and 1879 above cited. It was an action in equity brought by
the plaintiff, as heir-at-law, to set aside a will alleged to have
been obtained by fraud and undue influence. I gather from
the case that the devisees were in possession under the will, as
it is stated that the complaint was demurred to, the point of the
demurrer being that equity had no jurisdiction of the action,
the plaintiff's remedy being by a suit in ejectment.

The case of *Allen* v. *McPherson* (1 H. of L. 191), decided
that an action of the same nature as that of *Pryer* v. *Howe*
could not be maintained in equity, because a will of personal
estate might be set aside in the ecclesiastical court for fraud,
and if of real estate the action would have to be tried at law.

In *Melnish* v. *Milton* (3 Ch. Div. 27), the doctrine was
affirmed, and the learned judge who delivered the opinion in
*Pryer* v. *Howe* states that it was conceded that prior to the
act of 1853 an action of that nature could not be maintained.

It is not an authority upon the question as to whether such
an action could be maintained under the section of the Code
under discussion. *Drake* v. *Drake* was an action brought to
determine the validity, construction and effect of certain

provisions of the last wills and testaments of Mary H. Drake and James Drake, respectively; but no question was raised as to the validity of the execution of the instrument.

The case of *Adams* v. *Becker* (47 Hun, 65), simply holds that under section 1866 an action can be brought for the construction of a disputed and doubtful devise contained in a will, although no trust is created therein. Whether that section has wrought such a change in the law upon that subject we do not say. That question is not now before us. In *Horton* v. *Cantwell* (*supra*), there was a valid devise of all the property in trust for the life of the plaintiff, and for her benefit, and we held that in order to permit her action to be maintained to obtain a construction of another devise in the will it would have to appear that the property devised therein might possibly be enjoyed in possession by the plaintiff in her lifetime in case the devise in question should prove invalid; and as such was not the case the plaintiff showed no appreciable interest in the question, which was as to her a mere abstraction, and that courts did not sit to give opinions in such cases.

There was no implication contained therein that an action such as this could be maintained under this section, and certainly none was intended, for the question was not in the case and was not in any way discussed or any opinion intimated regarding it. None of the cases, we think, is an authority for maintaining this action. In *Weed* v. *Weed* (94 N. Y. 243), it was held that a devisee who claimed a mere legal estate in the real property of the testator, when there is no trust, cannot maintain an action for the construction of the devise, but must assert his title by a legal action, or if in possession must await an attack upon it and set up the devise in answer to the hostile claim. It is true that was an action for the construction of certain clauses in a will and hence is not directly in point here. But it shows the tendency of the court to continue in the same path it has tread for many years, by denying jurisdiction in equity in matters regarding wills separated from trusts and to send to the legal branch of

the court questions of that nature for determination. (*Chipman* v. *Montgomery*, 63 N. Y. 221; *Wager* v. *Wager*, 89 N. Y. 161.)

· We think very little weight is to be attached to the allegation that a devisee in possession of lands may be compelled to await an attack upon his title by an heir-at-law until his proofs in regard to the proper execution of the will by a competent testator have been lost. The heir stands in the same danger in regard to losing his evidence of an improper execution of the will by an incompetent testator, while the devisee has the great advantage, by proving the will before the surrogate, of having a judicial determination in his favor upon the very question, and which stands in the place of proof until attacked and overthrown. In addition to that, in the case of adult heirs-at-law, he is simply required to wait for three years, and if at the end of that time he remain in the possession and his title has not been attacked he may take proceedings to compel the determination of any claim to the real estate, as provided for by the Code. It is true it does not reach the case of infant heirs, but that alone does not furnish adequate reason for assuming a jurisdiction in a case like this, the effect of which would be, as we think, to largely increase litigation, in matters of this nature, in the Supreme Court, and tend to confusion in matters of the probate of wills, arising out of a concurrent jurisdiction of Surrogates' Courts and the Supreme Court.

· We see nothing in any of the other allegations of the complaint which would give jurisdiction to the court in this species of action. Upon a careful examination of the whole case we think the General Term was right in holding the action could not be maintained, and its order reversing the order ·granting the injunction should be affirmed, with costs.

All concur.

·Order affirmed.