(5 App. Div. 432.)

BAGLEY v. CONSOLIDATED GAS CO.

(Supreme Court, Appellate Division, First Department. May 22, 1896.)

MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT.

While plaintiff was assisting in hoisting a tank into defendant's building, the tank, in consequence of being improperly attached to the ropes, turned over, and knocked the boards from a scaffold which had been used in the construction of the building, and one of the boards struck plaintiff and injured him. If the tank had been properly secured to the ropes, or if the boards on the scaffold had been removed or fastened, no injury would have resulted. The scaffold was sufficient for the purpose for which it was intended, and defendant had supplied proper appliances and a competent foreman to direct the work. *Held*, that plaintiff could not recover, as the negligence, if any, of the foreman, was the negligence of a fellow servant.

O'Brien, J., dissenting.

Appeal from circuit court, New York county.

Action by Cornelius Bagley against the Consolidated Gas Company to recover damages for personal injuries sustained by plaintiff, through the alleged negligence of defendant, while in its employ. The accident occurred by the sudden turning of a tank, which was being hoisted into a building, causing it to strike part of a scaffolding, which had been used in the erection of the building, into which the tank was being hoisted. From a judgment entered on a verdict in favor of plaintiff, defendant appeals. Reversed.

Argued before Van BRUNT, P. J., and RUMSEY, O'BRIEN, and. INGRAHAM, JJ.

Daniel Lord, for appellant.
Lorenzo Semple, for respondent.

INGRAHAM, J. As was said by Peckham, J., in the case of Cullen v. Norton, 126 N. Y. 5, 26 N. E. 905:

"There is very little room for disagreement as to the principles of law in this class of cases, but the difficulty lies in their application to the facts of each special case."

And we can see no escape from the conclusion that the principles of law as established by the court of appeals are controlling. In the case cited the defendant was the proprietor of a cement quarry, and

the plaintiff's intestate was engaged, with other men, under the direction of a foreman, in drilling rock in the quarry for blasting purposes. Prior to the accident 11 holes had been drilled in a perpendicular piece of rock, were charged and fired, and but 10 of them exploded. Doran, the defendant's foreman, examined the unexploded hole, found the fuse unconsumed, but failed to remove it. The next morning he directed two of the workmen to drill holes in the rock within 2 feet of the undischarged hole, and at the same time ordered the deceased to drill 20 or 30 feet below. The exposed fuse shortly after in some way ignited the charge. This exploded, casting out rock which fell on the deceased, killing him. The court held that the manner of the distribution of men for work, and the order of the foreman, mistakenly or negligently given, was a detail of the working or management of the business, the risk attending which had been assumed by the party taking the employment, and that the negligence of Doran in failing to remove the fuse, or in directing the plaintiff's intestate to work, at the place he did, near the hole in which the powder had not exploded, was not negligence of the master, but was the negligence of a fellow-servant,—the court saying:

"The accident resulted from a negligent act, done in the very course of the work, and by one of the fellow workmen of the deceased. The negligent act was a part performance of the work itself, the risks of which the deceased had assumed. The master provided a competent and experienced foreman, who had been in his employment a number of years; and he was not chargeable with the consequences of a place for work made dangerous only by the carelessness and neglect of a fellow servant, although that fellow servant happened to be the foreman."

As a further illustration of the application of this rule, the case of Hogan v. Smith, 125 N. Y. 774, 26 N. E. 742, is instructive. In that case the plaintiff's intestate was a longshoreman engaged with others in loading a vessel with flour. "In the square of the hatch, and above the hold, the workmen had laid plank, and built upon it, with bags of flour, what is called a 'stool,' upon which four men stood and received the flour lowered to them in slings, and then delivered it to other men who stowed it away. It was customary for the longshoremen to extend the plank upon which the 'stool' was constructed to some distance outside of it, but that precaution had been omitted, and the deceased was struck by one of the descending loads, and killed by falling into the hold. If the plank had been laid in the usual manner, his life would have been saved. The negligence, therefore, upon which the judgment rests is the omission to lay the exterior plank, and the question discussed is to whom that duty pertained, and whose negligence caused the injury." The deceased commenced the labor after the stool had been built, and without knowledge of the omitted plank, and the consequent possibility of danger; and it was held that the duty to close an opening by laying additional plank was that of the servant, and not the master, and that no negligence on the part of the master was shown. And in the case of McCampbell v. Steamship Co., 144 N. Y. 552, 39 N. E. 637, the same principle was applied. There the accident was caused

by the improper attachment of a skid, by which one of the defendant's steamships was being unloaded. The plaintiff, with another employé of the company, was directed to take a truck and transfer drums of caustic soda from the deck of the vessel to the dock. The skid was placed in position, with one end upon the deck of the vessel and the other upon the dock. The plaintiff and his associate took the truck, drew it up the skid onto the vessel, and placed it in position. The drums of soda were then raised from the hold of the vessel and placed on the truck. The plaintiff started down the skid, drawing the truck after him. When he was about halfway down, the front wheels of the truck dropped into an opening between the end of the skid and a "mouthpiece," causing a sudden jerk of the handle of the truck, which threw him down, causing the injury. The court held that the defendant was not liable, and that the negligent rigging of the skid was the act of the co-employés of the plaintiff.

We do not think that this case can be distinguished from the cases cited. Here a scaffold was constructed which appears to have been entirely safe for the purpose for which it was to be used. The plaintiff, in the employ of the defendant, was directed to assist in hoisting a large tank into the pump house of the defendant through a window or archway. Upon this scaffold several boards had been placed, which were not tied or fastened. The tank to be hoisted appears to have been improperly attached to the ropes, so that, upon its being hoisted, it turned over, striking in some way against a part of the scaffold, knocking off the boards, one of which struck the plaintiff. If the tank had been properly secured to the ropes, or if the boards upon the scaffold had been removed or tied, no injury would have resulted. The defendant had supplied a proper scaffold, with proper boards, and proper appliances for the work, and a competent foreman to direct it; and any negligence in the use of these materials by the foreman was clearly, under the cases above cited, the negligence of a fellow workman, and one of the risks which the plaintiff assumed in accepting the employment and undertaking the work that he was directed to do. There was thus no neglect of the defendant to supply the plaintiff with a safe and proper place in which to prosecute his work, safe tools and implements for his use, or a competent foreman to direct him in the work that he was to do, but simply a neglect in the proper management and use of the materials furnished.

An examination of the cases relied on by the plaintiff, and an endeavor to reconcile the various decisions upon this question, would serve no good purpose. The cases here relied on are the latest decisions of the court of appeals upon this question, and are controlling upon us; and we think they require that we should hold that there was no evidence of the defendant's negligence which would justify a recovery.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and RUMSEY, J., concur.

O'BRIEN, J. (dissenting). The accident occurred by the outward swing of ropes attached to a tank which was being hoisted into a building striking part of a scaffolding which had been used in the erection of the building into which the tank was being hoisted. This scaffolding had been erected about the front of the building for masons to stand on while repairing walls which had been damaged by fire, and consisted of certain uprights, across which were placed poles lashed to the uprights with ropes. Timbers, called "foot rests," were set loosely in the wall. Loose planks were placed upon the foot rests, upon which the masons stood while repairing the injured walls. The object for which the scaffold was erected had been accomplished. The masons' work was done. The defendant undertook to hoist a tank, weighing about five tons, into the building, through a window or archway, which latter was obstructed by the scaffold. It became necessary to make some change in the scaffolding in preparing the place for the men to work, and the foreman in charge had caused to be removed the loose planks upon a part of the scaffold, but left loose planks upon the other part, under which the fall for hoisting the tank was led out. To hoist the tank, the foreman rigged a derrick with blocks and fall, and secured it by guys. Preparations being thus advanced, the foreman, requiring more help, sent for plaintiff, who was employed at another place, and ordered him to assist in hoisting, indicating the place where he was to work, which was under that part of the scaffold from which the loose planks had not been removed. As the tank was lifted from the ground, it canted outward, and the outward swing of the ropes struck the foot rests of the scaffolding, detaching them from their place, and these, with the loose planks, fell a distance of nearly 20 feet, one of the planks striking the plaintiff upon the head and causing him severe and serious injuries.

It is conceded that the manner in which the foreman undertook to raise the tank was negligent; and if a recovery were sought on that ground solely, I would concur with Mr. Justice INGRAHAM that the cases of Cullen v. Norton, 126 N. Y. 5, 26 N. E. 905, Hogan v. Smith, 125 N. Y. 774, 26 N. E. 742, and McCampbell v. Steamship Co., 144 N. Y. 552, 39 N. E. 637, would be controlling, because where, as in those cases, the injury occurred by reason of the negligence of a co-servant, though one of a higher grade than the one injured, in performing a duty arising during the progress of the work, and which was included as a detail in the performance of the work itself, for such an injury the master is not liable. Where the very nature of the employment and of the work is dangerous, and that apparently so to the person accepting the same, he assumes all the risks. That, as I view it, was the reason and principle involved in the Norton Case. But the opinion recognizes the well-settled rule of law that "a master is bound to furnish reasonably safe and suitable implements for the use of the servants, and a reasonably safe place of employment, considering the nature of the employment itself." At the outset, then, it is necessary to determine what was the proximate cause of the injury.

Was it the negligence of defendant in failing to furnish plaintiff with a safe or proper place in which to do his work, for which defendant would be liable, or was it the negligence of a fellow servant in hoisting the tank, for which defendant would not be liable? Upon the evidence, the answer involved a mixed question of law and fact, which, under proper instructions by the court, was left to the jury; and their verdict cannot be said to be without evidence to sustain it, because it appears that the accident could not have happened as it did, however careless or negligent the foreman may have been in hoisting the tank, if the scaffold, or even the loose planks, had been removed.

Apart, therefore, from the question as to the negligence of the foreman in failing to adopt proper precautions in the details of the work of hoisting the tank, the discussion here narrows down to whether the place in which the plaintiff was set to work was a safe and proper place. If it was not, the defendant cannot escape liability upon the theory that the duty of providing a safe place was delegated to the foreman, who is to be regarded as a co-servant, and that for the latter's failure the defendant is not liable; because the rule is too well settled to be disturbed that where an employé is injured by the negligent performance of an act of duty which the master, as such, is required to perform, the master is liable, although the negligence is that of a fellow servant to whom the performance of the duty was intrusted, and this irrespective of the rank of the person guilty of negligence. Hankins v. Railroad Co., 142 N. Y. 416, 37 N. E. 466; Stuber v. McEntee, 142 N. Y. 204, 36 N. E. 878; Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449; Pantzar v. Mining Co., 99 N. Y. 376, 2 N. E. 24; McGovern v. Railroad Co., 123 N. Y. 287, 25 N. E. 373. The evidence shows that the danger to be apprehended from attempting to lift the tank with a derrick was known to the foreman, who, in the selection of a safe place, was acting for the master, and the suggestion was made that, before lifting the tank, the scaffolding, or at least the loose planks thereon, should be removed. And while the planks immediately in front of the opening or archway through which the tank was to be hoisted were removed, the foreman rejected the suggestion as to the removal of the scaffolding or the remainder of the planks. The plaintiff, on the other hand, had no knowledge of the conditions of the place in which he was put to work, which was immediately beneath a structure which, in connection with the hoisting of the tank, and the reasonable probability that the ropes, or some portion of the tank, while in process of hoisting, might come in contact with the scaffolding, cannot, as a matter of law, be regarded as a safe place. I think, therefore, that, in selecting for the plaintiff the place in which he was to work, the foreman was performing a duty delegated to him by the master, for which, in the event of negligence, the latter would be responsible; and upon the evidence here I think it was properly submitted to the jury, as a question of fact, whether such place was a reasonably safe and

proper place; and, the jury having resolved this question against the defendant, their verdict should not be disturbed. I therefore dissent from the majority, and think the judgment should be affirmed, with costs.